* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Baddour. The appealing party has shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission rejects the findings of fact found in the Opinion and Award of Deputy Commissioner Baddour and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS 1. This claim arises from an alleged occupational disease claim. *Page 2 
2. All parties are properly before the Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter.
3. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. The parties were subject to the Workers' Compensation Act at the time of the alleged injury and an employer/employee relationship existed between them.
5. St. Paul Travelers Insurance Company was the carrier on the risk on or about April 3, 2003.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. This case arises from a denied claim for an occupational disease, specifically bilateral epicondylitis, which plaintiff alleges she developed on or about April 3, 2003. Defendants denied plaintiff's claim pursuant to a Form 61, on the grounds that plaintiff did not develop a compensable occupational disease, or sustain a compensable injury by accident, arising out of and in the course of her employment.
2. Plaintiff was initially represented by Bruce Allen of Fayetteville, North Carolina. Plaintiff, through counsel, filed a Form 33, Request for Hearing. The parties were ordered by the Industrial Commission to participate in mediation, and designated Alan Pittman as the mediator of this matter.
3. On April 1, 2004 the parties participated in a mediated settlement conference that took place at Mr. Pittman's office in Fayetteville, North Carolina. Mr. Pittman served as the *Page 3 
mediator. Plaintiff was represented by attorney Bruce Allen. Michael Ricci was present representing the defendants. The workers' compensation carrier representative, David Beard, participated in the conference by telephone. The mediated settlement conference lasted approximately two and a half (2 ½) hours, during which time the parties negotiated in good faith.
4. At mediation, the parties reached a settlement agreement and Mr. Pittman prepared a "Mediated Settlement Agreement" form, including information such as the I.C. file number, case caption, amount of settlement, payment of medical expenses, and waiver of potential credits.
5. The agreement states that: "The parties stipulate and agree that as a result of the mediated settlement conference held on the 1st day of April, 2004, in Fayetteville, North Carolina, a full and final settlement of all issues was reached. The terms of said Agreement are as follows". The agreement went on to list the specific terms of the agreement under separate bullet paragraphs.
6. Paragraph one of the agreement states: "Defendant has agreed to pay plaintiff $2,500.00. The plaintiff shall execute a clincher agreement." With respect to payment of medical expenses, the agreement also states that, "defendants shall waive any possible credit for unemployment benefits payments. Plaintiff shall be responsible for outstanding medical bills."
7. All parties present at the mediation voluntarily signed the Agreement in Mr. Pittman's presence, including plaintiff, her attorney, Mr. Allen, and defense counsel, Mr. Ricci.
8. Mr. Pittman also prepared and signed a "Report of Mediator" on April 5, 2004. This report states that the mediation was held on April 1, 2004 and that the parties reached an agreement on all issues to be disposed of by a clincher agreement. The report also sets forth Mr. *Page 4 
Pittman's fee, and the party responsible for payment of the mediator's fee. Mr. Pittman signed and submitted the report to the Industrial Commission following the mediation.
9. As required by Rule 4(d) of the Commission's Rules for Mediated Settlement and Neutral Evaluation Conferences, following the mediation, defense counsel drafted the formal Agreement of Final Settlement and Release. By correspondence dated April 6, 2004, defendants forwarded the clincher to Mr. Allen, plaintiff's counsel, for approval and execution. Attached to the clincher were Exhibit A, consisting of the complete set of medical records in the parties' possession, and Exhibit B, consisting of the unpaid medical expenses incurred to that date, along with a medical records certification for plaintiff's execution.
10. The clincher and the attached documentation were consistent with the terms of the mediated settlement agreement and contained the required language under Rule 502 of the North Carolina Industrial Commission Workers' Compensation Rules.
11. Plaintiff's counsel subsequently notified defendants that plaintiff no longer wished to honor the settlement agreement. As a result, on April 8, 2004, plaintiff's attorney filed a Motion to Withdraw from representation.
12. On May 6, 2004, Executive Secretary Tracey H. Weaver filed an Order allowing Mr. Allen's withdrawal from representation of plaintiff and assessing no further costs.
13. Defendants filed a Motion to Enforce Settlement and Stay Further Proceedings, with exhibits, on or about May 12, 2004. This matter was then referred for hearing on the sole issue of whether the mediated settlement agreement was enforceable. The hearing took place on August 17, 2004 in Fayetteville, North Carolina. Prior to the hearing, plaintiff retained new representation from Brumbaugh, Mu King, P.A., with Angela Vandivider-Stanley as counsel of record. *Page 5 
14. Plaintiff claimed that although she signed the Mediated Settlement Agreement, she was not aware of what she was signing, and did not read the document. Plaintiff claimed that she did not know the mediation was intended to discuss settlement of her claim. However, plaintiff directly contradicted this claim at the hearing of this matter. Plaintiff testified that she was originally represented by Bruce Allen in this matter, and admitted that she was aware she was attending mediation on April 1, 2004. Plaintiff stated she was accompanied by her attorney at mediation, and initially stated that she remembered the mediator explaining the process of mediation to her, explaining he was not a judge, and that he was there to assist the parties to settle her claim. Plaintiff testified that she remembered the attorneys giving their opening statements, and the parties separating to private rooms for negotiations. The undersigned find plaintiff's testimony that she was not aware that she was participating in a mediation to settle her claim not credible and is given little weight.
15. Based upon the greater weight of the evidence of record, the undersigned find that the mediated settlement agreement was sufficient and the compromise settlement agreement was fair and just to the parties and in the best interest of the parties.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. A mediated settlement agreement is governed by the general principles of contract law. In order for a mediated settlement agreement to be enforceable, there must be a meeting of the minds as to all essential terms of the agreement, and the terms must be definite and certain. The parties in this case signed and executed a mediated settlement agreement agreeing upon all *Page 6 
of the terms therein and agreed to execute a formal compromise settlement agreement based upon the terms of the mediated settlement agreement. Both the mediated settlement agreement and the report of the mediator addressed (1) the amount of the settlement, (2) how medical expenses were to be paid, (3) how the mediator's fee would be paid, (4) the fact that all issues were to be settled, and (5) that the claim would be resolved by defendants' submission of a clincher agreement. There was a meeting of the minds as to all essential terms of the agreement and the terms were sufficiently definite and certain. Therefore, the mediated settlement agreement is sufficient and is a valid enforceable agreement. Lemly v. Colvard Oil Co., 157 N.C App. 99,577 S.E. 2d 712 (2003).
2. An agreement may be considered for approval as a compromise settlement agreement if it meets the general provisions of contract law and complies with the requirements of Rule 502 of the Workers' Compensation Rules of the North Carolina Industrial Commission. The compromise settlement agreement prepared and submitted to plaintiff by defendants on April 6, 2004 was in accordance with the executed mediated settlement agreement and was in compliance with Rule 502 of the Workers' Compensation Rules of the North Carolina Industrial Commission.Id.
3. The Commission may compel a party to an agreement to execute a clincher agreement in accordance with the mediated settlement agreement or may also approve a clincher even though plaintiff has refused to sign it. Id.
4. Upon review of the compromise settlement agreement prepared by defendants and submitted to plaintiff for execution on April 6, 2004, the undersigned find that the agreement is fair and just and is in the best interest of all the parties. N.C.I.C. Rule 502.
 * * * * * * * * * * * *Page 7 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants' claim to enforce the mediated settlement agreement is hereby GRANTED.
2. The compromise settlement agreement dated April 1, 2004 prepared by defendants and submitted to plaintiff on April 6, 2004 pursuant to the mediated settlement agreement dated April 1, 2004 is hereby approved.
3. Defendants shall pay the costs due the Commission.
4. An attorney's fee of $625.00 is approved for plaintiff's former council, Bruce Allen.
This the 20th day of June 2007
S/___________________________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________________ LAURA K. MAVRETIC COMMISSIONER
 S/___________________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1